IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LOUISIANA INTERNATIONAL § <br> MARINE, L.L.C. § <br> § <br> v. § <br> § <br> The Drilling Rig ATLAS CENTURY, § <br> *and her engines, tackle, apparel,* § <br> *appurtenances, etc., in rem, and* § <br> KTM SERVICES, INC., *in personam* § | | C.A. NO. C-11-186 <br><br><br><br> Admiralty Fed. R. Civ. P. 9(h) |

## OPINION GRANTING LIMITED DISCOVERY CONCERNING VESSEL STATUS

This is an admiralty action filed pursuant to Supplemental Rule C of the Federal Rules of Civil Procedure. Pending is Bayfront Consulting, LLC (Bayfront) and Basic Energy, LTD's (Basic) Motion to Conduct Discovery Concerning Vessel Status. (D.E. 58). On September 21, 2011, responses were filed by both Plaintiff Louisiana International Marine, L.L.C., (D.E. 60), and Intervenor GAC Shipping (USA), Inc. (D.E. 62). Intervenors Bayfront and Basic filed a reply on September 22, 2011. (D.E. 63). Finally, Intervenor Signet Maritime Corp. (Signet) filed a surreply on September 26, 2011. (D.E. 65). For the reasons stated herein, limited discovery shall be conducted to determine the vessel status of Atlas Century as of the date that the parties entered into the contracts on which this case is based.

### I. BACKGROUND

This dispute arises from certain contracts providing Defendant KTM Services, Inc. ("KTM") with financing and transport services relating to the semi-submersible drilling rig Atlas Century. The Atlas Century was constructed around 1973 by Diamond Offshore Drilling, Inc. ("Diamond"). (D.E. 58, at 3). Diamond removed the rig from service in July 1998, and "cold-stacked" it in the Gulf of Mexico for thirteen years without any intent to return it to active

service.  Id.  In 2003, the rig was sold to Viking Offshore (USA), Inc., though it remained cold-stacked indefinitely.  Id.  On January 10, 2011, KTM purchased the rig with financial backing from Bayfront and Basic.  Id.  From around April 1, 2011 to May 21, 2011, KTM entered into various contracts to move the Atlas Century from Sabine Pass, Texas to Ingleside, Texas.  (D.E. 1, at 2; D.E. 11, at 2; D.E. 32-1, at 2; D.E. 57-1, at 2, 4).  KTM also contracted with COSCO Shipping Co., LTD on April 26, 2011 to transport the Atlas Century from Ingleside to Abu Dhabi, U.A.E.  (D.E. 29, at 3).

The Atlas Century was successfully towed to Ingleside on June 1, 2011.  (D.E. 1, at 3).  On that same day, Plaintiff Louisiana International Marine, L.L.C., filed this action against Defendants Atlas Century *in rem* and KTM Services, Inc. *in personam*, alleging a contractual breach arising from their failure to fully compensate Plaintiff for towing the Atlas Century from Sabine Pass, Texas to Ingleside, Texas.  (D.E. 1, at 2-3).  An order for seizing the Atlas Century was issued on June 2, 2011, (D.E. 4), and the vessel has since remained in the custody of the United States Marshal's Service.  (D.E. 46-1, at 1).  As of September 16, 2011, GAC Shipping (USA) Inc., COSCO Shipping, Co., Ltd., Signet Maritime Corp., Bayfront, Basic, International Divers Co., Inc., and Seabulk Towing Services, Inc. have intervened in this litigation.  (D.E. 11; D.E. 29; D.E. 32; D.E. 43; D.E. 44; D.E. 57).

On September 19, 2011, Bayfront and Basic filed a motion to Conduct Discovery Concerning Vessel Status to determine whether this Court can exercise admiralty jurisdiction over the Atlas Century.  (D.E. 58).  Bayfront and Basic argue that because the Atlas Century is a "dead ship," it is not a "vessel."  Id.  Plaintiff and other intervenors oppose this motion for discovery, asserting that the Atlas Century is a "vessel" and that admiralty jurisdiction exists.

(D.E. 60; D.E. 62; D.E. 65).

## II. DISCUSSION

The Federal Rules of Civil Procedure outline the scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In discussing Rule 26(b)(1), the Fifth Circuit has characterized the scope of discovery as broad. Crosby v. La. Health Serv. & Indem. Co., 647 F.3d 258, 262 (5th Cir. 2011); Chiasson v. Zapata Gulf Marine Corp., 988 F.2d 513, 515 (5th Cir. 1993). This broad approach frames the review of the pending motion.

The party asserting "federal jurisdiction has the burden of proving the existence of jurisdiction." Molett v. Penrod Drilling Co., 872 F.2d 1221, 1227 (5th Cir. 1989) (citation omitted). This burden "cannot be placed upon the adversary who challenges it." Gaitor v. Peninsular & Occidental S.S. Co., 287 F.2d 252, 253 (5th Cir. 1961) (citations omitted). The fact that an intervenor is questioning the existence of jurisdiction does not alleviate Plaintiff and the remaining intervenors from collectively satisfying this burden.

This Court presumably has jurisdiction over these maritime claims pursuant to 28 U.S.C. § 1333. Critical to the inquiry of whether there is admiralty jurisdiction is the question of whether the suit involves a "vessel" within the meaning of Supplemental Rule C of the Federal Rules of Civil Procedure and 1 U.S.C. § 3. As explained by the Supreme Court, a "vessel" is broadly defined as "any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." Stewart v. Dutra Constr. Co., 543 U.S. 481, 497 (2005). Where a watercraft has been "permanently moored or otherwise rendered practically incapable of transportation or movement," it is not a "vessel." Id. at 494. It is

therefore the watercraft's ability to be readily used for transportation on navigable waters that is significant in determining vessel status.  See Holmes v. Atlantic Sounding Co., 437 F.3d 441, 448 (5th Cir. 2006) ("as long as a water-borne structure is practically capable of being used for transportation on navigable waters, it is a 'vessel'" (citing Stewart, 543 U.S. at 497)).

Accordingly, "dead ships" that have been "withdrawn from navigation and maritime commerce" are not considered "vessels" sufficient to support admiralty jurisdiction.  Amoco Oil v. M/V Montclair, 766 F.2d 473, 477 (11th Cir. 1985) (citation omitted).  For admiralty claims filed based on a contract, "the vessel's status at the time that the parties contracted is the determinative factor."  Goodman v. 1973 26 Foot Trojan Vessel, Arkansas Registration No. AR1439SN, 859 F.2d 71, 73 (8th Cir. 1988); accord Robert E. Blake, Inc. v. Excel Envtl., 104 F.3d 1158, 1160 (9th Cir. 1997) (adopting the holding of Goodman and examining whether a ship was a vessel at the time the contract was formed).

All parties to this suit allege contract claims.  (D.E. 11; D.E. 29; D.E. 32; D.E. 43; D.E. 44; D.E. 57).  Therefore, whether there is maritime jurisdiction depends on whether the Atlas Century was a "dead ship" at the time the parties entered into the contracts underlying this case.  Because the parties have submitted nothing regarding the vessel status of the Atlas Century at the time the contracts were formed, limited discovery must be conducted to determine whether the Atlas Century was a vessel during that relevant time period.

### III.  CONCLUSION

Based on the foregoing reasons, the motion for discovery by Bayfront and Basic, (D.E. 58), is granted for the limited purpose of conducting discovery into the vessel status of the Atlas Century at the time the contracts underlying this case were formed.  All such discovery shall be

completed within sixty days of this Order.

ORDERED on this 28th day of September 2011.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE