IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LOUISIANA INTERNATIONAL MARINE, L.L.C. | § § § | |
| v. | § § | C.A. NO. C-11-186 |
| The Drilling Rig ATLAS CENTURY, *and her engines, tackle, apparel, appurtenances, etc., in rem, and* KTM SERVICES, INC., *in personam* | § § § § § | Admiralty Fed. R. Civ. P. 9(h) |

**MEMORANDUM AND RECOMMENDATION TO
GRANT PLAINTIFF'S MOTION FOR SALE OF VESSEL**

This is an admiralty action filed pursuant to Supplemental Rule C of the Federal Rules of Civil Procedure. Pending is Plaintiff Louisiana International Marine, L.L.C.'s motion for the Court to conduct an interlocutory sale of the vessel Atlas Century. (D.E. 39). Defendant KTM Services filed a brief opposing the sale on September 29, 2011, (D.E. 67), as well as a supplemental brief on October 19, 2011 in response to an order by the Court. (D.E. 75). For the reasons stated herein, it is respectfully recommended that Plaintiff's motion for the interlocutory sale of the Atlas Century be granted.

**I. JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. § 1333 over maritime claims.[1]

**II. BACKGROUND**

On June 1, 2011, Plaintiff filed this lawsuit against Defendants Atlas Century *in rem* and KTM Services, Inc. *in personam*, alleging a contractual breach arising from their failure to fully

---

[1] An Intervenor raised the issue of whether this Court has jurisdiction based on the belief that the Atlas Century is not a vessel within the meaning of admiralty law. An order was issued granting limited discovery on this issue. (D.E. 66). Such discovery and any briefing would be concluded before any sale of the vessel would be feasible.

compensate Plaintiff for towing the drilling rig Atlas Century from Sabine Pass, Texas to Ingleside, Texas. (D.E. 1, at 2-3). Plaintiff claims that it is owed $859,100 in damages pursuant to the terms of the "TOWCON" INTERNATIONAL TOWAGE AGREEMENT (LUMP SUM). Id. An order for the seizure of the Atlas Century was issued on June 2, 2011, (D.E. 4), and the vessel has since remained in the custody of the United States Marshals Service. (D.E. 46-1, at 1).

Plaintiff posted legal notices of the seizure in the Corpus Christi Caller-Times and the Houston Chronicle from July 8, 2011 to July 10, 2011. The notices also directed that all potential claimants file a statement of interest with the Clerk of Court for the Southern District of Texas by July 25, 2011. (D.E. 46-2, at 2-5; D.E. 46-3, at 2; D.E. 46-4, at 2; D.E. 46-5, at 2). As of September 16, 2011, Bayfront Consulting, L.L.C., Basic Energy, Ltd., GAC Shipping (USA) Inc., International Divers Co., Inc., COSCO Shipping, Co., Ltd., Seabulk Towing Services, Inc., and Signet Maritime Corp. (collectively "Intervenors") have intervened in this action and similarly assert contractual claims against Defendants. (D.E. 11; D.E. 29; D.E. 32; D.E. 43; D.E. 44; D.E. 57). Their claims range in value from $35,944.25, (D.E. 57, at 3), to $9.9 million. (D.E. 29, at 4).

The Atlas Century has an estimated market value of $32.5 million, as determined by independent surveyors. (D.E. 67-1, at 2-3). Defendant has been attempting to secure financing for the oil rig since June 19, 2011. (D.E. 75-1, at 2). As of October 17, 2011, Swiss creditor Satarem A.G. has indicated that it purportedly will be taking steps to initially disburse $25 million to Defendants at some time between November 20, 2011 to December 10, 2011. (D.E. 75-1, at 7).

### III.  DISCUSSION

Plaintiff seeks an interlocutory sale of the Atlas Century complaining that: (1) the expense of keeping the property under the control of the Marshals Service is excessive or disproportionate, and (2) the Defendant has unreasonably delayed securing the release of the property.  (D.E. 39-1, at 3).  In response, Defendant argues that the cost of impounding the Atlas Century is neither excessive nor disproportionate, and it disputes Plaintiff's assertion that it has unreasonably delayed posting bond for the vessel.  (D.E. 67, at 3).

The Supplemental Rules for Admiralty Or Maritime Claims authorize a federal district court to conduct an interlocutory sale:

> On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold–with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court–if:
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or disproportionate; or
> (C) there is an unreasonable delay in securing the release of the property.

Fed. R. Civ. P., Supp. Admiralty Rule E(9)(a)(i).  A showing of only one of the three criteria is sufficient for the Court to order an interlocutory sale.  See Silver Star Enters., Inc. v. M/V SARAMACCA, 19 F.3d 1008, 1014 (5th Cir. 1994) (showing of either excessive expense or unreasonable delay constituted valid and independent grounds for interlocutory sale); see also Merchants Nat'l Bank of Mobile v. Dredge Gen. G. L. Gillespie, 663 F.2d 1338, 1341 (Former 5th Cir. Unit A Dec. 1981) (interpreting a previous, but substantively identical, version of the Supplemental Rules for Admiralty).  The interlocutory sale of a vessel pursuant to Rule E(9)(a)

does not touch on the merits of any particular claim, but instead is a measure taken to "avoid[ ] the recognized complications associated with maintaining a vessel under arrest."  Freret Marine Supply v. M/V ENCHANTED CAPRI, No. 00-3805, 2001 WL 649764, at *1 (E.D. La. June 11, 2001) (unpublished); accord Regions Bank v. Motor Yacht ROYAL INDULGENCE, No. 3:10cv100, 2010 WL 4595792, at *3 (N.D. Fla. Oct. 13, 2010) (unpublished) (citations omitted).

A.   **The Expense Of Keeping The Atlas Century Is Neither Excessive Nor Disproportionate.**

There are two prevailing views regarding what constitutes an "excessive or disproportionate" expense within the meaning of Rule E(9)(a)(i)(B).  Some courts measure the expense against the amount sought by the plaintiff.  See John W. Stone Oil Distrib., L.L.C. v. M/V LUCY, No. 09-4440, 2009 WL 4166605, at *2 (E.D. La. Nov. 20, 2009) (unpublished) ("The Court finds that the expense of keeping the vessels is excessive and disproportionate when compared to the amounts of the liens...."). Other courts focus their inquiry on whether the expense is excessive compared to the value of the vessel that is the subject of the litigation.  See Adams Offshore, Ltd. v. Con-Dive, LLC, No. 09-0378-WS-B, 2010 WL 433676, at *1 (S.D. Ala. Feb. 1, 2010) (unpublished) ("Given the plaintiff's admission that even the forced liquidation value ... is at least $2,500,000 ..., expenses of $51,000 (or barely 2%) cannot easily be called disproportionate...."); Gyasi v. M/V ANDRE, No. 07-23282-CIV, 2008 WL 906761, at *2 (S.D. Fla. Apr. 1, 2008) (unpublished) (considering the plaintiff's argument that "the expense of keeping the vessel is disproportionate to its value," but ultimately dismissing the motion for lack of factual support); Pee Dee State Bank v. F/V WILD TURKEY, No. 2:91-809-18, 1991 WL 355221, at *5 (D.S.C. Oct. 9, 1991) (unpublished) (comparing the custodial costs of the vessel with the market value of the vessel before ordering an interlocutory sale).

In support of its contention that the expense of keeping the property is excessive or disproportionate, Plaintiff submits copies of checks paid to the United States Marshals Service for detaining the Atlas Century from June to July of 2011 totaling to $50,000. (D.E. 39-2, at 1; D.E. 39-3, at 1-6). Plaintiff also estimates that it spends $18,000 per month on these custodianship fees. (D.E. 39-1, at 3).

Because Plaintiff seeks $859,100, it pays a little over two percent of the value of its damages sought per month to the Marshals Service. Although the cumulative total of these expenditures could become substantial over time, at least one court has declined to order an interlocutory sale solely on the expectation that modest custodial costs would eventually cause the "value of the liens ... to exceed the value of the vessel." Schoninger v. M/V THREE OLIVES, No. 10-69-P-H, 2010 WL 1935855, at *3 (D. Me. May 10, 2010) (unpublished). Even if these monthly payments were aggregated for the past six months, the total ($108,000) would still only constitute 12.6 percent of Plaintiff's damages claim. Such a sum is neither excessive nor disproportionate, especially when Plaintiff is responsible for the higher cost of custody due to its failure to secure a substitute custodian for the vessel. (D.E. 68).

Furthermore, these claimed expenses are insignificant when compared to the total value of the Atlas Century. The per month expenditures of $18,000 weigh in at about one-half of one-thousandth of the value of the oil rig. Even the accrued total expenditures from June through November would amount to less than a third of one percent of the Atlas Century's value. Therefore, it is respectfully recommended that regardless of whether Plaintiff's expenses are compared against the value of its damages claim or the market value of the Atlas Century, its expenses should not be found to be "excessive or disproportionate" within the meaning of Rule

5

E(9)(a)(i).

**B. There Has Been An Unreasonable Delay In Securing The Release Of The Atlas Century.**

The general practice among courts is to allow vessel owners approximately four months to bond a vessel. M/V LUCY, 2009 WL 4166605, at *1 (collecting cases). Beyond this initial four-month period, courts have found delay reasonable where the vessel's owner demonstrated taking active measures to secure the release of the vessel. Boland Marine & Mfg. Co. v. M/V A.G. NAVAJO, No. 02-0658, 2002 WL 31654856, *2 (E.D. La. Nov. 22, 2002) (citing Action Marine, Inc. v. M/V NORSEMAN, No. 96-3945, 1997 U.S. Dist. LEXIS 5898, at *3 (E.D. La. Apr. 28, 1997)).

Since the Atlas Century was ordered seized on June 2, 2011, Defendant has not yet been able to post bond for the vessel. Given the lapse of the four-month grace period, Defendant offers records of correspondence with its creditor Satarem to demonstrate that it has been making efforts to raise the money needed to release the vessel. (D.E. 75-1, at 2-7). The most recently dated letter suggests that Defendant will receive $25 million, more than enough money to post bond for the Atlas Century, by December 10, 2011. Id. at 7. Notwithstanding this arrangement, there is no evidence in the record of any other creditor willing to provide financing in the event that the deal with Satarem is not reached.

While Defendant should be allowed an opportunity to post bond if it does receive financing from Satarem, the fact that it has only attracted one creditor after six months is not insignificant.[2] As Defendant concedes, the Atlas Century is a special vessel worth $32.5 million

---

[2] Ideally, Defendant posts an adequate bond after obtaining financing from Satarem. The timing of this memorandum and recommendation encompasses the current timetable for financing outlined by Defendant. If financing is obtained, then this recommendation would be moot; but it is currently necessary given the time and

specially built for oil drilling and exploration. (D.E. 67-1, at 2-3). If Satarem is unable to provide the expected financing, it likely will be difficult for Defendants to find another sophisticated energy investor to join the project within a reasonable amount of time. Defendant's failure to obtain backup financing should not be allowed to prejudice Plaintiff and Intervenors, who have already spent the past six months languishing in litigation. Accordingly, it is respectfully recommended that an interlocutory sale be scheduled on or after December 12, 2011 to provide Defendant with one final chance to secure the release of the Atlas Century in accordance with its financing agreement with Satarem.

## IV. RECOMMENDATION

Based on the foregoing reasons, it is respectfully recommended that Plaintiff's motion for an interlocutory sale of the Atlas Century, (D.E. 39), be granted and the Atlas Century be scheduled for sale on or after December 12, 2011.

Respectfully submitted this 21st day of November 2011.

_____
BRIAN L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

---

complexity involved in auctioning a vessel like Atlas Century.

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).